```
                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE SOUTHERN DISTRICT OF OHIO
                              EASTERN DIVISION
```

**TERESA A. LANDEFELD,**

          **Plaintiff,**
   vs.                                          Civil Action 2:15-cv-880
                                                                         Judge Frost
                                                                         Magistrate Judge King

**COMMISSIONER OF SOCIAL SECURITY,**

          **Defendant.**

REPORT AND RECOMMENDATION

**I.**     Introduction and Background

      This is an action instituted under the provisions of 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for supplemental security income ("SSI"). This matter is before the Court for consideration of plaintiff's *Statement of Errors*, ECF 10, the Commissioner's *Memorandum in Opposition*, ECF 17, and plaintiff's *Reply*, ECF 18.

      Plaintiff Teresa A. Landefeld filed her current application for benefits on September 28, 2011, alleging she has been disabled since December 21, 2010, as a consequence of mental health issues, fibromyalgia, upper and lower back problems, and right knee surgery. *PAGEID* 252. The application was denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

      A hearing was held on October 17, 2013, at which plaintiff, represented by counsel, appeared and testified, as did Carl W. Hartung, who testified as a vocational expert. In a decision dated November 20, 2013, the administrative law judge concluded that plaintiff was not disabled.

1

*PAGEID* 70-88.  That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review. *PAGEID* 46-51.

Plaintiff was 43 years of age on the date she filed her current application for benefits. *PAGEID* 87, 247. She has a high school equivalent education and, at the time of the administrative hearing, required one more class to complete an Associate's Degree. *PAGEID* 102-03, 253.  She has not engaged in substantial gainful activity since September 28, 2011, the date her application was filed. *PAGEID* 72.

## II. Hearing Testimony

### A. Plaintiff's Testimony

Plaintiff testified that she is unable to work because of "two major problems in my upper neck, back, shoulder area, and my right knee, and along with that I get IBS [irritable bowel syndrome] problems."  *PAGEID* 107. Plaintiff also testified to carpal tunnel syndrome; she drops things and she sometimes simply cannot pick things up.  *PAGEID* 115.  Her hands cramp and lock up after about ten to fifteen minutes of typing. *PAGEID* 116. Some of her medications cause dizziness and sleepiness. *PAGEID* 112. Plaintiff rated her pain at an 8 on a 10-point analog scale. *PAGEID* 114. She uses a TENS unit on a daily basis; she also uses an electric blanket for her neck pain.  *PAGEID* 113.  She lies down for eighteen to nineteen hours each day to relieve her pain.

Plaintiff testified that her doctors have limited her to lifting no more than a gallon of milk because of her fused discs. *PAGEID* 115.  If she walks too far, her knee locks up.  *PAGEID* 108.  She has been prescribed crutches and a leg stabilizer, which she uses.  *Id.*  She has never used a cane.  *PAGEID* 108-09. She cannot sit for very long because of arthritis

2

and scoliosis.  *PAGEID* 109.  Her college teachers allow her to stand in the back of the room; she can go home and lie down between her classes.  *Id.*  She sometimes uses a mobilized cart at the grocery store. *PAGEID* 110.  Plaintiff drives a vehicle, although she has difficulty with range of motion and feeling panicky since being in a car accident.  *PAGEID* 111.

She has trouble reading and watching television, finding it "hard to comprehend and retain what's being said and whether it's reading, watching TV, even holding a conversation."  *PAGEID* 110.  Plaintiff interacts with people primarily by telephone because she finds it difficult to sit or stand and hold conversations.  *Id.*

Plaintiff is able to care for her personal needs.  *PAGEID* 111. She eats simple meals like yogurt, cereal and microwavable foods. *Id.* She does her own dishes and laundry, but performs no vacuuming, gardening or yard work.  *PAGEID* 111-12.

    **B.**    **Vocational Expert Testimony**

The vocational expert testified that plaintiff's past jobs include administrative clerk, a light, semi-skilled position; and personal attendant, also a light, semi-skilled position. *PAGEID* 119.

Asked to assume a claimant with plaintiff's vocational profile and the residual functional capacity ultimately found by the administrative law judge, *PAGEID* 119-21, the vocational expert testified that such a claimant could perform such representative jobs as marker (2,175 jobs in the region, 11,208 jobs in the state, and 271,192 job nationally), labeler (199 jobs in the region, 1,066 jobs in the state, and 26,827 jobs nationally), and photo copy machine operator (153 jobs in the region, 597 jobs in the state, and 18,292 jobs nationally).  *PAGEID* 120-21.

**III. The Evidence of Record**

Plaintiff has been diagnosed with degenerative disc disease, herniated disk, and retrolisthesis at C5-C6, for which she underwent an anterior cervical discectomy and fusion at C5-C6 on November 25, 2009. *PAGEID* 524-25.

Plaintiff was seen at Central Ohio Primary Care on November 19, 2010, by Tonya Carter, C.N.P., who, although noting that plaintiff's examination was normal, assessed neck pain, anxiety and fibromyalgia. *PAGEID* 444-46. On December 1, 2010, plaintiff complained of pain "all across her neck and both shoulders." *PAGEID* 441. Her examination was again normal. *PAGEID* 442-43. Jamar B. Williams, M.D., a primary care physician, commented that plaintiff no longer needed narcotic pain management. *PAGEID* 443.

Plaintiff presented to an emergency room in December 2010 complaining of pain in the lower back, neck, and right knee, which had been exacerbated by a fall. *PAGEID* 490. Tenderness in the neck and low back upon palpation was noted. On neurological examination, strength was 5/5 upon flexion and extension and sensation was grossly intact in all extremities. Straight leg raising was negative bilaterally. Plaintiff's gait was intact. *Id.*

Plaintiff presented to an emergency room again in March 2011 with complaints of her leg locking up and pain. *PAGEID* 645. Hospital notes include plaintiff's report that her symptoms are worse with the use of a cane. *PAGEID* 647. X-rays of the knee were unremarkable and there was no evidence of soft-tissue swelling, fracture, or dislocation. *PAGEID* 647-48. Plaintiff's history of receiving narcotic pain medication from the emergency department was also noted. *PAGEID* 647.

4

On April 21, 2012, Janice Peterson, Ph.D., performed a consultative psychological evaluation at the request of the state agency. *PAGEID* 535-39. Plaintiff complained of depression, bi-polar disorder, and anxiety. *PAGEID* 535. Plaintiff reported that she attended school, all day, from Monday through Friday, beginning at 8 a.m., and that she then did homework and research. She reported sleeping 2-3 hours per night with occasional naps during the day. *PAGEID* 537.  She described her academic, reading, and writing abilities as excellent, but her arithmetic skills as poor. *Id.*  On mental status examination, plaintiff's affect was reactive and her prevailing mood appeared to be mildly dysphoric. Her reported symptoms were consistent with depression. Dr. Peterson diagnosed a depressive disorder, nos; a panic disorder without agoraphobia; post-traumatic stress disorder, chronic; and a personality disorder. *PAGEID* 538.  According to Dr. Peterson, plaintiff could perform simple to moderate routine work without strict production requirements, would not have difficulty responding appropriately to supervisors, coworkers, and the public, and could perform adequately in a low to moderate stress work setting.  *PAGEID* 539.

Plaintiff presented to University Medical Associates on March 22, 2012 to establish care. *PAGEID* 567-70.  Plaintiff asked for referrals to a cardiologist, rheumatologist, and orthopedist. *PAGEID* 567.  She reported taking only ibuprofen for pain.  *PAGEID* 568.  On examination, plaintiff exhibited tenderness and limited range of motion in her neck and right knee as well as abdominal tenderness.  *PAGEID* 569.  On May 3, 2012, plaintiff complained of arthritis in her neck and shoulder.  *PAGEID* 564.  On examination, a nurse practitioner noted tenderness in the muscles over the shoulders and back. *PAGEID* 566.  Plaintiff was diagnosed with myalgia and myositis, and osteoarthrosis.  *Id.*

5

Judith Brown, M.D., consultatively evaluated plaintiff for the state agency on May 9, 2012. *PAGEID* 541-49. Plaintiff attributed her neck and right knee problems to a 1996 motor vehicle accident. She reported a cervical fusion and three right knee arthroscopies but complained of continued chronic pain in these areas. She also reported a left carpal tunnel release but she also reported on-going symptoms consistent with carpal tunnel syndrome. She also reported diagnoses of fibromyalgia and mitral valve prolapse. *PAGEID* 542, 545. On examination, Dr. Brown reported 18/18 positive tender points and diffuse tenderness of the shoulders anteriorly. There was also tenderness at the cervical spine and the lower back at L5. There was tenderness over both wrists with positive Tinel's sign bilaterally. Straight leg raising was unremarkable in the sitting position. She was able to stand on each leg alone and walk on her heels and toes, walk heel-to-toe and squat without difficulty. There were no sensory abnormalities. Deep tendon reflexes were normal and no muscle weakness was noted. According to Dr. Brown, plaintiff's ability to perform work-related activities (such as bending, stooping, lifting, walking, crawling, squatting, carrying, traveling, pushing and pulling heavy objects) was at least mildly impaired. "She can perform at least light duty work." *PAGEID* 545.

X-rays of the cervical spine taken in August 2012 in connection with complaints of chronic neck pain and status post fusion showed an obstructed discectomy and fusion at C5-C6, slight disc space narrowing at C3-C4 and C4-C5, and moderate anterior spondylosis at C4-C5. *PAGEID* 581.

In October 2012, Lynne Torello, M.D., reviewed the record for the state agency and completed a physical residual functional capacity assessment. Dr. Torello considered Listings 1.02, 1.04, 3.09, and 14.06,

6

*PAGEID* 161, but opined that plaintiff has the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently, and to stand, walk or sit for six hours in an 8-hour workday. *PAGEID* 163. Plaintiff would be limited to occasional pushing and/or pulling (including operation of hand and/or foot controls) in the lower right extremity due to her history of knee surgeries and complaints of pain. *Id.* Plaintiff could never climb ladders, ropes and scaffolds; could occasionally kneel, crouch or crawl; and could frequently stoop and climb ramps or stairs. *Id.*

Plaintiff was seen by primary care physician Michael Soroka, D.O., on October 15, 2012, for treatment of fibromyalgia and chronic low back pain. Plaintiff requested medication for stress, explaining that school demands, including having to write papers, exacerbated her irritable bowel syndrome. *PAGEID* 604.

X-rays taken in November 2012 showed minimal spurring at the dorsal spine. *PAGEID* 624.

Plaintiff presented to pain management specialist Amish Patel, D.O., on December 4, 2012. Dr. Patel diagnosed mid- to lower-neck pain, most likely a symptom of cervical facetogenic pain syndrome, bilaterally at C5-6 and greater than C4-5. Dr. Patel prescribed MS Contin. *PAGEID* 664.

AN MRI of the lumbar spine taken on December 15, 2012, showed mild degeneration without significant canal, recess or foraminal narrowing. *PAGEID* 696.

When seen by pain management specialist Kenneth Marshall, M.D., on April 22, 2013, plaintiff's gait and transitional movements seemed well preserved, her upper extremity strength, sensation, and deep tendon reflexes were intact, and her cervical spine tone was normal. Range of motion of the cervical spine was mildly limited with diffuse tenderness

about the neck and shoulders. Dr. Marshall prescribed narcotic medication and ordered cervical epidural steroid injections at C6-7. *PAGEID* 652-53.

Plaintiff was seen by primary care physician Roxanne Cech, M.D., on August 2, 2013, to "follow-up on multiple issues." *PAGEID* 676. Plaintiff complained of pain and reported using crutches at times. However, she was found to ambulate normally and her physical exam was normal. *PAGEID* 678.

Orthopaedic specialist Stephen Voto, M.D., evaluated plaintiff's right knee on October 15, 2013. Plaintiff reported chronic, progressive pain despite prior scopes, physical therapy and anti-inflammatories. On examination, Dr. Voto found a positive McMurray sign with trace effusion and crepitus. Plaintiff's knee was ligamentously stable and neurovascularly intact, with good muscle tone, full manual muscle strength, and no evidence of other abnormality. Dr. Voto diagnosed persistent right knee chondromalacia and a probable torn meniscus. He recommended physical therapy, non-steroidal medication, and an MRI. *PAGEID* 699.

**IV. Administrative Decision**

The administrative law judge found that plaintiff's severe impairments include degenerative disc disease of the cervical spine status post cervical spine surgery; right knee pain status post knee surgeries; fibromyalgia; irritable bowel syndrome; carpal tunnel syndrome status post carpal tunnel release; depressive disorder, not otherwise specified; anxiety disorder; and personality disorder. *PAGEID* 72. The administrative law judge also determined that plaintiff's "impairments, singly or in combination, [do not]meet or equal the requirements set forth in the Listing of impairments, particularly Listing 1.02, 1.04, 5.06, 12.04, 12.06, and 12.08." *PAGEID* 72-75.

> The administrative law judge found that plaintiff retains the RFC
>
> to lift and carry twenty pounds occasionally, ten pounds frequently; stand and walk for six hours out [of] an eight hour workday; sit for six hours out of an eight hour workday; occasionally push and pull with the right lower extremity; frequently climb ramps and stairs and stoop; can occasionally kneel, crouch, and crawl; cannot climb ladders, ropes or scaffolds; limited to no strict time or production demands; limited to occasional superficial contact with supervisors, co-workers and the general public in a relatively static work environment with static work processes and procedures; limited to simple to moderate tasks with no strict time or production demands and a low to moderate stress job.

*PAGEID* 75. In making this determination, the administrative law judge afforded "great weight" to the opinions of, *inter alia*, the state agency reviewing physician, Dr. Torello, and the consultative examining physician, Dr. Brown. *PAGEID* 85. The administrative law judge also found that plaintiff's subjective complaints have "generally been inconsistent, unpersuasive, exaggerated, and not support with objective findings." *PAGEID* 81.

Relying on the vocational expert's testimony, the administrative law judge found that this RFC permits plaintiff to perform jobs that exist in significant numbers in the national economy. *PAGEID* 87. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act at any time from the date of her application for benefits until the date of the administrative decision. *PAGEID* 88.

**V.   DISCUSSION**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971).

Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Halter,* 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Secretary of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Longworth v. Comm'r Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005).

Plaintiff's *Statement of Errors* focusses on the administrative law judge's evaluation of plaintiff's diagnosed fibromyalgia. Plaintiff specifically challenges the administrative law judge's credibility determination and complains that the administrative law judge failed to consider the condition in accordance with Social Security Rule ("SSR") 12-2p.

**1. Credibility Determination**

Ordinarily, a claimant's subjective complaints must be supported by objective medical evidence in order to serve as a basis for a finding of disability. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993). *See also* 42 U.S.C. § 423(d)(5)(A). In evaluating subjective

10

complaints, it must be determined whether there is objective medical evidence of an underlying medical condition. *Stanley v. Sec' of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). If so, then the evaluator must determine (1) whether objective medical evidence confirms the severity of the complaint arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged complaint. *Id.*; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986).

Plaintiff has been diagnosed with fibromyalgia and the administrative law judge included that condition in plaintiff's severe impairments. Fibromyalgia "causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances." *Preston v. Secretary of Health and Human Services*, 854 F.2d 815, 817-20 (6th Cir. 1988)(*per curiam*). *See also* SSR 12–2p, 2012 WL 3104869, at *2 (describing fibromyalgia as "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months."). However, the mere diagnosis of the condition "does not automatically entitle [a claimant] to disability benefits. . . . Some people may have a severe case of fibromyalgia as to be totally disabled from working but most do not and the question is whether claimant is one of the minority." *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx 801, 806 (6th Cir. 2008). Because patients with the condition "present no objectively alarming signs," *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 243 (6th Cir. 2007), "CT scans, X-rays, and minor abnormalities, . . . are not highly relevant in diagnosing [the condition] or its severity." *Preston*, at 820.

11

Plaintiff complains that, in evaluating her credibility, the administrative law judge "improperly focused on what the ALJ considered insufficient objective evidence to prove [the plaintiff's] alleged symptoms and limitations." *Statement of Errors*, p. 9. This Court disagrees.

In evaluating a claimant's credibility, an administrative law judge should consider the objective medical evidence and the following factors:

> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7, 1996 WL 374186 (July 2, 1996). The administrative law judge's credibility determination is accorded great weight and deference because of the administrative law judge's unique opportunity to observe a witness's demeanor while testifying. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)(citing *Gaffney v. Bowen*, 825 F.2d 98, 973 (6th Cir. 1987)). However, credibility determinations must be clearly explained. *See Auer v. Sec'y of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987). If the administrative law judge's credibility determinations are explained and enjoy substantial support in the record, a court is without authority

to revisit those determinations. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 386–87 (6th Cir. 1978).

In the case presently before the Court, the administrative law judge dedicated four and one-half pages to the evaluation of plaintiff's credibility. *PAGEID* 81-85. Specifically, the administrative law judge articulated the proper standard for evaluating a claimant's credibility, summarized plaintiff's testimony and reports, as well as the medical evidence, and yet found that her subjective complaints were not entirely credible. In reaching this conclusion, the administrative law judge considered not only the objective medical evidence, but also plaintiff's daily activities, *PAGEID* 81, her many inconsistent statements that appear throughout the record, *PAGEID* 81-83, her treatment history and the "significant gaps in [her] history of treatment," *PAGEID* 83, as well as her sporadic work history, *PAGEID* 84. The administrative law judge found that plaintiff's subjective complaints are not entirely credible. "The claimant has been able to attend college classes on a full-time basis and perform extensive activities of daily living despite her allegations of disabling symptoms." *PAGEID* 85.

Although plaintiff disagrees with the administrative law judge's credibility findings, the Court concludes that this credibility determination enjoys substantial support in the record.

**2. SSR 12-2p**

Plaintiff also contends that the administrative law judge failed to evaluate her fibromyalgia in accordance with SSR 12-2p. Specifically, according to plaintiff, the administrative law judge found plaintiff's

13

fibromyalgia to be a severe impairment at step two of the sequential evaluation, but failed to properly assess plaintiff's fibromyalgia at steps three, four, or five as required by SSR 12-2p. *Statement of Errors*, pp. 13-15.

SSR 12-2p "provides guidance on how [the Social Security Administration] develop[s] evidence to establish that a person has a medically determinable impairment of fibromyalgia and how [the Social Security Administration] evaluate[s] fibromyalgia in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act." SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). Where, as here, fibromyalgia is found to be a severe impairment at step two of the sequential evaluation of disability, the condition must be considered at each succeeding step of the evaluation: "[W]e consider the severity of the impairment, whether the impairment medically equals the requirements of a listed impairment, and whether the impairment prevents the person from doing his or her past relevant work or other work that exists in significant numbers in the national economy." *Id*. at *5.

Fibromyalgia is not a listed impairment. At step three of the sequential evaluation, then, the Commissioner determines whether the condition "medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment." *Id.* at *6. As noted *supra*, the administrative law judge determined that plaintiff's impairments, which include fibromyalgia, "singly or in combination, [do not] meet or equal the requirements set forth in the Listing of impairments, particularly Listing 1.02, 1.04, 5.06, 12.04, 12.06, and 12.08." PAGEID 72-75. Plaintiff complains that the

14

administrative law judge failed to consider whether plaintiff's fibromyalgia meets Listing 14.09D.[1] *Statement of Errors*, p. 14. However, SSR 12-2p does not mandate express consideration of Listing 14.09D and plaintiff – who bears the burden of proof at this stage of the sequential evaluation – does not articulate how her condition meets this listing. Moreover, the state agency physician who reviewed the record and to whose opinion the administrative law judge accorded "great weight," *PAGEID* 85, considered whether plaintiff's impairments meet or equal a listed impairment and concluded that they do not.  See *PAGEID* 163. *See also PAGEID* 545 (the consultative examiner who diagnosed fibromyalgia, nevertheless opined that plaintiff "can perform at least light duty work.").

The administrative law judge included fibromyalgia among plaintiff's severe impairments at the second step of the sequential evaluation and he appropriately considered the limitations imposed by that condition at every succeeding stage of the sequential evaluation.  The decision of the administrative law judge enjoys substantial support in the record and must, therefore, be affirmed.

It is therefore **RECOMMENDED** that the decision of the Commissioner be affirmed pursuant to Sentence 4 of 42 U.S.C. § 405(g) and that this action be dismissed.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve

---

[1] Listing 14.09D requires a finding of disability upon proof of the following:

Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
  1. Limitation of activities of daily living,
  2. Limitation in maintaining social functioning,
  3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date: December 8, 2015                    *s/Norah McCann King*
                                          Norah McCann King
                                          United States Magistrate Judge